UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CITY OF WESTFIELD, MASSACHUSETTS,
et al.,

                Plaintiffs,      Civil Action
                              No. 18-30027-DJC
V.                           No. 17-40002

3M COMPANY, et al.,         July 12, 2018
                              3:10 p.m.
                Defendants.
_____

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE DENISE J. CASPER

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA  02210

DEBRA M. JOYCE, RMR, CRR, FCRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA  02210
joycedebra@gmail.com

```
 1      APPEARANCES:

 2      FOR THE PLAINTIFFS:

 3      RICHARD W. HEAD, ESQ.
        SL Environmental Law Group PC
 4      450 Mission Street, Suite 400
        San Francisco, CA 94105
 5      415-348-8300

 6      JOHN E. GARBER, ESQ.
        Weinberg & Garber, P.C.
 7      71 King Street
        Northampton, MA 01060
 8      413-582-6886

 9      ROBERT D. COX, JR., ESQ.
        Bowditch & Dewey LLP
10      311 Main Street
        P.O. Box 15156
11      Worcester, MA 01615
        508-926-3409
12
        FOR THE DEFENDANTS:
13
        JOHN D. STUEBING, ESQ.
14      Tarlow, Breed, Hart & Rodgers PC
        101 Huntington Avenue
15      Boston, MA 02199
        617-218-2067
16
        MICHAEL A. SCODRO, ESQ.
17      Mayer Brown LLP
        71 S. Wacker Drive
18      Chicago, IL 60606
        312-701-8886
19
        DAVID WEINRAUB, ESQ.
20      DOUGLAS E. FLEMING, III, ESQ.
        Dechert LLP
21      1095 Avenue of the Americas
        New York, NY 10036
22      212-698-3500

23      LINDSAY M. BURKE, ESQ.
        Kenney & Sams, P.C.
24      225 Turnpike Road
        Southborough, MA 01772
25      617-634-9325
```

```
 1      APPEARANCES (CONT'D)

 2      CHRISTOPHER M. REILLY, ESQ.
        Sloane & Walsh
 3      Three Center Plaza
        Boston, MA 02108
 4      617-523-6010

 5      MICHAEL E. PASTORE, ESQ.
        Greenberg Traurig LLP
 6      One International Place
        Boston, MA 02110
 7      617-310-6277

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Denise J. Casper, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on July 12, 2018.)

THE CLERK:  Court is in session.  Please be seated.

Civil action 18-30027, City of Westfield v. 3M.

Counsel, please state your name for the record.

MR. HEAD:  Richard Head from the SL Environmental Law Group for the plaintiff.

MR. GARBER:  John Garber, your Honor, Assistant City Solicitor for the City of Westfield.

THE COURT:  Good afternoon, counsel.

MR. FLEMING:  Doug Fleming, your Honor, for the defendants Tyco Fire Products and Chemguard.

MR. SCODRO:  Michael Scodro, your Honor, for the defendant 3M.

MR. WEINRAUB:  David Weinraub for defendant Tyco and Chemguard.

THE COURT:  Good afternoon, counsel.

MS. BURKE:  Good afternoon, your Honor.  Lindsay Burke, also for Tyco and Chemguard.

MR. STUEBING:  John Stuebing, your Honor, for 3M.

THE COURT:  Good afternoon.

1          Counsel, I know we're here for defendants' motion to

2     dismiss.  I apologize for starting a little bit later than our

3     scheduled time.  We had a full courtroom for the prior

4     proceeding.

5          Counsel, I'm prepared to hear argument.  You're not

6     writing on a completely blank slate here.  I'm familiar with

7     the arguments to some extent, but I'll hear you, counsel.

8          MR. FLEMING:  Your Honor, if I may, I'd be happy to

9     hand this up to you.  The defendants coordinated to try to

10    break up the argument to avoid duplication.  We've got a

11    proposed sequence of the arguments as between Westfield and the

12    County of Barnstable action that we shared with Mr. Head that

13    I'd be happy to hand up.

14         THE COURT:  Sure, thank you.

15         MR. FLEMING:  On the first side, your Honor, has the

16    proposed sequence of the arguments.  On the backside of the

17    document, it has a checklist of the various causes of action in

18    each action.

19         And what we would propose is that Mr. Scodro argue the

20    City of Westfield motion to dismiss, who represents 3M on

21    behalf of the defendants, and that I would argue the County of

22    Barnstable motion to dismiss on behalf of the defendants as

23    well.  I represent Chemguard and Tyco Fire.

24         THE COURT:  Okay.

25         MR. FLEMING:  Thank you, your Honor.

1         THE COURT:  Counsel, is that acceptable?

2         MR. HEAD:  Certainly, your Honor.

3         THE COURT:  So why don't we begin with that outline

4    and sequence in mind, counsel.

5         MR. SCODRO:  Your Honor, it's Michael Scodro on behalf

6    of defendant 3M, as Mr. Fleming said, arguing on behalf of both

7    defendants for purposes of this argument.

8         Your Honor, we would begin, naturally, with personal

9    jurisdiction in this case.  Obviously the briefs have covered

10   this in some detail, but I'll begin very quickly with general

11   jurisdiction.  I'm not sure that a lot needs to be said on

12   this.

13        Since the Supreme Court's decision in Goodyear Tire in

14   2011 and then Daimler Chrysler in 2014, it's clear that absent

15   an extraordinary circumstance -- and the Supreme Court has to

16   date identified only one -- general jurisdiction lies only for

17   a corporation in its -- where it has its principal place of

18   business and where it is incorporated.  And for neither

19   defendant in this case is that the state of Massachusetts.

20        So unless your Honor has questions on general

21   jurisdiction, I'll turn briefly to specific jurisdiction.

22        THE COURT:  Thank you.

23        MR. SCODRO:  Thank you, your Honor.

24        The plaintiff continues to rely on the stream of

25   commerce idea, but this notion was substantially revised in the

1    Supreme Court's Asahi decision, your Honor, in 1987, and this
2    court and the first district have explicated that notion far
3    further since then.
4          We know from the Supreme Court's decision in Walden in
5    2014 that there needs to be suit-related conduct in the state,
6    and that those -- that conduct or those contacts have to be
7    something that the defendant itself creates.
8          To flesh out that standard, we have three factors:
9    relatedness, purposeful availment, and reasonableness.
10          Your Honor, the plaintiff here has failed to allege
11    either relatedness or purposeful availment.  Either one of
12    those is fatal to their personal jurisdiction claim.
13          I'll briefly address relatedness each in the first
14    instance, your Honor.
15          The in-state conduct that gives birth to the cause of
16    action has to be related to the claims.  And nothing says this
17    more clearly than the Supreme Court's 2017 decision in
18    Bristol-Myers Squibb which makes clear that unconnected
19    activity in the state is irrelevant for purposes of the
20    specific jurisdiction analysis.
21          Your Honor, when it comes to the relatedness prong in
22    this case, all that plaintiff alleges and all that plaintiff
23    offers in their response to the motion to dismiss as to both
24    defendants is unrelated conduct.  That is, for example, the
25    fact that there's an unrelated plant in the jurisdiction.

1    Bristol-Myers Squibb makes perfectly clear that that cannot be

2    considered as part of the specific jurisdictional analysis.

3         And indeed, when we turn to purposeful availment, the

4    second prong, again, this is after they have failed

5    relatedness.  When it comes to purposeful availment, the 1st

6    Circuit has been very clear, it follows the plurality in Asahi,

7    mere stream of commerce is insufficient, something more is

8    needed, and that something more also has to be specific to the

9    cause of action, to the conduct that's being challenged.  And

10   there's simply nothing remotely like that alleged in this case,

11   your Honor.

12        The claim, and it's very clear in the complaint in

13   multiple paragraphs, is that the defendants sold their product,

14   AFFF, which is a firefighting foam, they sold that product to

15   the United States military, not even to a distributor -- and

16   putting to one side the fact that there are numerous cases from

17   this district and from the 1st Circuit that make clear that

18   even selling to a distributor is okay when it ends up in

19   Massachusetts, it does not give rise to specific jurisdiction.

20   But even putting that to one side, in this case, the allegation

21   is that the defendants sold their products to the end user, to

22   the customer, and the customer then happened to use that

23   product in Massachusetts.

24        1st Circuit cases, including Boit and Rodriguez, which

25   we cite in our brief, this Court's decision in Newman is

1    extremely close to this, your Honor, where the airplane at

2    issue was sold to a distributor.  In that case, there was even

3    an allegation that the distributor -- it wasn't the end user --

4    the distributor was a corporate affiliate of the defendant

5    corporation in that case, and still the Court correctly held

6    that's insufficient to find purposeful availment for purposes

7    of due process of specific jurisdiction in the Commonwealth of

8    Massachusetts.

9          So there is no question that in this case there simply

10   are no allegations that would give rise to either relatedness

11   or purposeful availment.  And indeed, to the contrary, by

12   affirmatively pleading that material was sold to the customer

13   who then happened to use it in Massachusetts and elsewhere is

14   perfectly clear, this would be the first court to be finding

15   that specific jurisdiction exists under those circumstances.

16   Indeed, it would be flatly inconsistent with rulings from this

17   district and from the 1st Circuit.

18         And finally, your Honor, because their specific

19   jurisdiction claim fails both on relatedness and purposeful

20   availment grounds, there's, of course, no need for the Court to

21   reach the reasonableness question.  This Court said as much in

22   Katz, the Supreme Court said as much in Daimler Chrysler.

23         Your Honor, at the end of the discovery section the

24   plaintiff asks for jurisdictional -- sorry, at the end

25   jurisdictional section, the plaintiff asks for jurisdictional

1    discovery.  We would urge the Court to deny that request.  To

2    be sure, as we've said, the complaint offers nothing to sustain

3    jurisdiction within the meaning of due process in this case.

4    But this Court's own decision in Horizon Comics Production, the

5    1st Circuit's decision in Negron-Torres, both of which we cite

6    in our brief --

7         THE COURT:  What is the standard for deciding whether

8    or not there should be jurisdictional discovery?  Meaning,

9    there's a colorable claim of jurisdiction?  Meaning, what's the

10   standard by which the court decides that?

11        MR. SCODRO:  Thank you, your Honor.  In Horizon Comics

12   Production, this Court said that it is -- while it's a

13   discretionary standard, the threshold showing requires a

14   colorable claim, exactly as your Honor said, and some

15   indication of how discovery would further the showing of

16   jurisdiction in this case.  And the Negron-Torres case from

17   2007 in the 1st Circuit, which I mentioned a moment ago, that

18   elaborates on that standard as well, your Honor, and says that

19   the plaintiff must present some facts or at least allege some

20   facts to show why personal jurisdiction -- excuse me, why

21   discovery would help to establish jurisdiction.

22        In this case, your Honor, the way the complaint is

23   pled by alleging that we sold to a customer who in its own --

24   under its own power -- certainly no one would contend that we

25   control where the military uses AFFF -- by making that

1    allegation, your Honor, I am hard-pressed to think of anything,

2    any fact that they could seek to establish specific

3    jurisdiction in this case, your Honor.  So that's why we would

4    urge the Court to deny any request for jurisdictional discovery

5    here.

6              THE COURT:  Thank you.

7              MR. SCODRO:  Your Honor, I'm happy to pause at this

8    point if you want to treat jurisdiction separately, or I'm

9    happy to proceed through the merits arguments as well.

10             THE COURT:  Well, counsel, do you want to respond to

11   that, and then we can go onto the merits?

12             MR. HEAD:  Sure.

13             THE COURT:  Thank you.

14             MR. HEAD:  Thank you.  Again, Richard Head for the

15   city.

16             THE COURT:  Thank you.

17             MR. HEAD:  The complaint alleges significantly more

18   than what has been stated relative to the jurisdiction of these

19   two defendants, and also as we had put in our response brief

20   there are public records relative to their contacts in the

21   Commonwealth of Massachusetts, both with regard to 3M and Tyco,

22   Tyco specifically with regard to AFFF distributors located

23   within the Commonwealth, one of which is within the county

24   where the City of Westfield is located.  So there is a direct

25   connection relative to AFFF and Tyco within the Commonwealth of

1    Massachusetts.  And 3M itself has a significant presence in the

2    Commonwealth of Massachusetts.

3         The other -- the aspects within the complaint alleging

4    contacts with the Commonwealth of Massachusetts is that it

5    does, in fact, engage in substantial and continuous and

6    systematic contacts with the Commonwealth.  It is not a fact,

7    as was argued by counsel, that it just happened to be used

8    in -- at this particular location.  This is a product that is

9    designed specifically for military use on all military bases

10   throughout the United States.  It is absolutely more than

11   foreseeable, but it is intended that by selling to the military

12   that it is going to be used, and that product is going to be

13   used in military bases, such as the one that's located in the

14   City of Westfield.

15        So it is not a product that is like most any other

16   product.  It has a very specific use.  In fact, it has to meet

17   military specifications in order to be sold to the military.

18   Not anybody can provide this product.

19        THE COURT:  What about the relatedness prong, counsel?

20   What's the best argument in that regard?

21        MR. HEAD:  The contacts with the Commonwealth of

22   Massachusetts in the allegations are directly related to the

23   behavior of the defendants.  They sold this product.  They

24   specifically instruct on how this product should be used,

25   military bases and non-military bases, that the product is

1    designed in a way that it is supposed to be sprayed on the

2    ground that directly causes the contamination that is at issue

3    in this case.  Their contacts with the state -- with the

4    Commonwealth of Massachusetts are that they sold directly for

5    the purpose, for the very specific purpose that it be used at

6    military bases, exactly like the situation we have here, where

7    it was used -- the product was used specifically as designed

8    and instructed by these defendants.

9        So the claim is directly related to those contacts

10   relative to their sale and advertise of a product that was used

11   and designed for a very specific purpose, which is for use on

12   military bases to put out liquid gasoline fires, such as what

13   you might see with an airplane.

14       So the contacts are directly related to the complaint

15   and the allegations that we have.

16       And it's also in terms of purposefulness, it is more

17   than a random fortuitous event.  It is a very specifically

18   designed activity on the part of these defendants that this

19   product be used at this particular facility.  It is the entire

20   nature of this product.  So it is not what would be described

21   as simply fortuitous or attenuated, but it is direct and

22   related.

23       And then with regard to the reasonableness factors, I

24   think they're fairly clearly laid out in our brief.  They're

25   the six -- or the five factors, pretty straightforward.  I

1    don't think I need to review those directly in argument, but I

2    think they're very well laid out in the brief.

3           So I would simply say that it is not that it happened

4    to be used at this particular facility, but that it was

5    designed to be used at this facility.  And it was sold and

6    marketed to be used at this facility, as with all the other

7    military bases that they sold their product to.  So it was

8    designed and intended to be used at this facility.

9           Simply the fact that they did not sell it directly to

10   somebody located in the City of Westfield is not the relevant

11   standard.  It was, in fact, designed and marketed and sold to

12   be used at the military bases, including this one.

13          I think that's the basic argument.

14          THE COURT:  Am I correct it was designed to be used at

15   military bases, not specifically this one, but at military

16   bases?

17          MR. HEAD:  All military bases, that's exactly right.

18          THE COURT:  But doesn't that make a difference for the

19   purposes of personal jurisdiction in this district?

20          MR. HEAD:  It doesn't, because it's a product --

21   simply because they sold it to the United States military, it

22   was -- that's just the way the military purchases their goods.

23   It was designed and understood to be used at all the

24   facilities, such as this one.  So it's not by happenstance that

25   it's being used here, but it's by direct intent that it's being

1    used at this particular facility.

2            Simply because it's used at other facilities

3    throughout the United States doesn't change the analysis

4    relative to the Commonwealth of Massachusetts.  The nature of

5    this product and its intent by these defendants was that it was

6    to be sold to this Air Force base or the Air National Guard

7    that uses this particular airport.

8            So, no, I would say it's directly related and it is a

9    purposeful availment of the jurisdiction of the Commonwealth of

10   Massachusetts by virtue of who its client is, its understanding

11   how it would be held and would be used.

12           THE COURT:  Thank you.

13           Counsel, why don't we -- I'll move back to the

14   defendants to start on the merits.  As opposed to allowing

15   rebuttal as to each of these, why don't I allow some general

16   rebuttal at the end.

17           MR. SCODRO:  I was going to ask, I have a few points

18   to make in response, your Honor.  Should I reserve on those?

19           THE COURT:  Why don't we do that.

20           MR. SCODRO:  With regard to proximate cause, there's

21   no dispute between the parties that proximate cause is an

22   element of all four causes of action raised in the complaint,

23   nor is there any dispute of what proximate cause means and its

24   various subelements: foreseeability, but-for, causation, and

25   substantial factor, your Honor.

1          The problem here for the plaintiff is that their

2   complaint not only doesn't plead causation but it affirmatively

3   pleads against causation to a certain extent, your Honor.

4          They claim here -- and they make this very clear in

5   their response because this is necessary to avoid any potential

6   statute of limitations issue -- that the harm they suffered,

7   the need to remediate and filter and so forth, didn't arise

8   until May of 2016 when the EPA issued its non-binding advisory

9   at 70 parts per trillion, your Honor.  And because they have

10  made that admission, the suggestion, therefore, is that -- and

11  they have made this express in the complaint as well -- that at

12  no other time, at no point prior to May of 2016, were the

13  limits in their various wells at all in excess of anything that

14  the government, the EPA or otherwise, had said would be too

15  high a level.

16         So their claim is that they were forced to remediate

17  because, as of May, suddenly now they are in excess of EPA

18  level.

19         The problem is they don't allege that in 2016 or even

20  in 2017 that the levels at any of the wells were in excess of

21  the EPA's 70 parts per trillion number.  On the contrary, your

22  Honor, in paragraph 77 of the complaint, they include a chart,

23  and the chart shows well samples taken at various points in the

24  year 2013.  And what those show is that at that point the

25  numbers were too high, but they actually show a significant

1    decrease in both of the chemicals that are at issue in this

2    case even over the short time frame that appears in that chart;

3    namely, February through August, I believe.  And they show in

4    one case with regard to PFOA and PFOS one of them decreases by

5    roughly 33 percent, another by 25 percent.

6          The complaint actually does more.  The complaint

7    explains why that is.  The complaint talks about the fact that

8    these chemicals migrate in groundwater, that the plume, as it's

9    called, can move through the earth.  So the complaint both

10   explains why one would expect changes in these numbers and

11   shows that they were on the decline rapidly three years before

12   they would need to exceed the EPA limit in order for there to

13   be any damage whatsoever in this case.

14         Now, your Honor, their only response to that in their

15   responsive pleading is to attach something that is -- it's an

16   interim report.  It is not a public document, at least we've

17   been unable to find it in any public place.  It is known as --

18   it is captioned "interim," there's going to be additional work

19   done, that's clear from the Interim Tactical Memorandum is the

20   name on it.  This is it from 2017, and it purports to show that

21   in one well, sampling showed numbers in excess of the EPA 70

22   parts per trillion.

23         Plaintiffs urge the Court to take judicial notice of

24   this document.  It's the only way they can salvage an

25   allegation of proximate cause in their complaint.  But, your

1    Honor, as we point out in reply, this document comes nowhere

2    close to the sort of self-sustaining document that one would

3    consider for purposes of judicial notice.

4         Your Honor was very careful in the December County of

5    Barnstable case to cabin the use of judicial discretion to

6    instances where they were truly public documents with

7    irrefutable facts.  And even in those circumstances, the

8    Court's opinion frequently said it would only use those

9    documents for purposes of notice for the discovery period for

10   purposes of statute of limitations.  Even there the Court

11   wasn't taking notice of them for the truth of the matter

12   asserted, but that's precisely what plaintiffs urge this Court

13   to do with this self-styled Interim Tactical Memorandum

14   involving limited testing on one of the wells.

15        And so we believe that this comes nowhere near the

16   requirements for judicial notice.  And accordingly, without

17   it -- and I'm not sure plaintiffs would even disagree --

18   without that document the complaint simply fails to allege any

19   kind of proximate cause here by failing to allege that the

20   numbers were too high when they engaged in the remedial

21   conduct, your Honor.

22        THE COURT:  Thank you.

23        Counsel, I apologize, I should have mentioned this to

24   both sides at the beginning.  I do need to be off the bench at

25   4:00.  I'm assuming, counsel, we can deal with everything here,

1    but I didn't want to get to 4:00 and then say that.  So,

2    counsel, I'll say that to both sides.

3              Did plaintiff want to respond to that issue?

4              MR. HEAD:  Yes, your Honor, thank you.

5              So the -- I would point your Honor to paragraph 80 of

6    our complaint, where we specifically say and allege --

7              THE COURT:  And I'll just tell both sides I have

8    copies of both operative complaints here.

9              MR. HEAD:  Thank you, your Honor.

10             And that prior to May 25, 2016 health advisory, the

11   levels of PFOS and PFOA were below.  Paragraph 81, following

12   EPA's publication, the City of Westfield was required to take

13   specific action relative to its drinking water sources as a

14   result of the EPA's issuance of the health advisory.

15             The loss that we're talking about is and the

16   allegations within the complaint do allege and specifically

17   allege foreseeability and consequence of the defendants'

18   conduct as the cause of the damage that the City of Westfield

19   is now suffering from.

20             The AFFF that we're talking about that is contaminated

21   with the PFOS and PFOA was specifically used and designed by

22   the defendant to be sprayed on the ground so that every use of

23   its product would result in the contamination of the soil and

24   groundwater.

25             We've also alleged the specific knowledge that these

1    defendants had relative to the risks associated with their

2    product, and that those -- as a result of the introduction of

3    those products into the -- and used at the airport has

4    resulted, specifically resulted in damage to the City of

5    Westfield as it relates to the health advisory that was issued

6    by EPA.

7            In addition, we've alleged that given the flow of

8    groundwater that additional wells are directly in line to be

9    affected and damaged and specifically costing the City of

10   Westfield additional sums of money as a result of the

11   contamination that is in the groundwater.

12           So I strongly disagree in terms of the level of

13   pleadings that are contained within the city's complaint.

14   We've alleged proximate cause, we've alleged damages that

15   directly relate to the activities that are a foreseeable

16   consequence of the defendants' conduct, and that those were

17   tied to the issuance of the health advisory by the

18   Environmental Protection Agency.

19           In addition, as we did put in our brief, there is

20   additional data in what we had turned into is essentially --

21   this is a motion to dismiss phase, not a summary judgment.

22   There's data, there's discovery that will happen relative to

23   proximate cause.  Typically proximate cause is a question of

24   fact, and the pleading as stated sufficiently alleges proximate

25   cause to survive a motion to dismiss.

1          I'm happy to address it if you want, in terms of --

2     this is going back to the personal discovery -- I didn't

3     address the discovery request that we had contained in our

4     motion; but there is, I would argue, a great deal of

5     information that could result from discovery if the Court deems

6     it necessary.

7          THE COURT:  I thought you did address --

8          MR. HEAD:  I didn't talk about it significantly, but I

9     just want to make sure on the record there is --

10          THE COURT:  I understood the argument.

11          MR. HEAD:  Thank you.

12          THE COURT:  Thank you.

13          Counsel, I think you had feasible alternative design

14     next.

15          MR. SCODRO:  Thank you, your Honor.  I'll be very

16     quick in light of the Court's time as well.

17          Very briefly, your Honor, this is covered well, I

18     think, in the parties' papers.

19          There is no dispute that there needs to be an

20     available and technologically feasible practical alternative in

21     order to make their design defect claim.  So this count, this

22     argument obviously goes to a single count, unlike the prior two

23     that covered the entire complaint.

24          Plaintiffs have simply failed to do that here.  Again,

25     your Honor, they have affirmatively -- and here this is quite

1    clear -- they have affirmatively argued or pled themselves out

2    of court on that element.

3        They've attached to their complaint a GAO report that

4    makes very clear, and it's consistent with the fact that the

5    military specifications continue to insist on AFFF that

6    includes these PFAS chemicals.  The GAO report that they attach

7    to their complaint on pages 18 through 20 makes crystal clear

8    that the military itself has yet to find any feasible

9    alternative, and they haven't even set a deadline for when they

10   might be able to do so.

11       If the plaintiff were correct and that all you needed

12   to do was take the PFAS out and that that was a feasible

13   alternative, surely the military would have done that by now

14   instead of telling other government actors that they're going

15   to need an indefinite period to figure out if anything can take

16   the place of PFAS.  I would just say to rule for them in this

17   context, your Honor, would run afoul of a number of decisions

18   cited in our brief, including the Town of Lexington where the

19   claim there was that one would -- could simply craft the same

20   substance without using PCBs, and the Court correctly said --

21       THE COURT:  I do remember, counsel.

22       MR. SCODRO:  Right -- what do we do without them.

23       THE COURT:  Counsel.

24       MR. HEAD:  Your Honor, I think what we're doing is

25   starting to expand our use of acronyms, take a class of

1    chemicals when we're really talking about two.

2         PFAS, which you just heard referenced, are per- and

3    polyfluoroalkyl substances.  There are 3,000 some-odd PFASs out

4    there in the world.  What we are talking about are two, PFOS

5    and PFOA, and these are the only two that we're talking about.

6    And we're talking about whether or not there was feasible

7    alternatives to having AFFF with PFOS and PFOA.  These are two

8    members of a class of PFASs.  And what we've alleged -- and

9    this is a motion to dismiss phase, not a summary judgment

10   phase -- and we very specifically have alleged in our complaint

11   is that there's an alternative design that is feasible -- and

12   feasibility is, in fact, the standard and the test by which

13   measurement would be alternative design -- and that would be at

14   paragraph 99 and also paragraph 37 of our complaint.

15        So we've very specifically alleged that there are

16   feasible alternative designs that are commercially viable, and

17   that the defendants failed to do that, even though they had

18   sufficient knowledge when they were manufacturing this product

19   and failed to do that.  In fact, there are alternatives to AFFF

20   that do not contain PFOS and PFOA in the same way that's

21   designed as the products that were being sold and used at the

22   airport.

23        So as we have alleged it in terms of a motion to

24   dismiss phase, the feasibility argument and the alternative

25   design argument has been preserved within the complaint.

1          Thank you, your Honor.

2          THE COURT:  Thank you.

3          Counsel, as to the 93A claim.

4          MR. SCODRO:  Yes, your Honor.  Very, very quickly on

5    93A, if possible, 60 seconds for rebuttal at the end, just a

6    few points if possible.

7          On 93A, as we point out in our brief, this is a

8    business transaction.  It's a Section 11 transaction, and there

9    is -- they are not privy to the same -- to use the same word,

10   the same transaction, your Honor, and that's what Section 11

11   requires.  Even if this were a Section 9 consumer claim -- and

12   it isn't for the reasons identified in our brief -- even if it

13   were, the case law is clear, the plaintiff still has to be a

14   purchaser, could be an indirect purchaser, but a purchaser, or

15   a user of the product, or in some other way involved in the

16   transaction.  None of those are true here.

17         Here they're claiming that they have stepped in to

18   remediate without any connection, without any use of the

19   product or any transactional connection to the plaintiff.  So

20   even under Section 9 -- and this is improperly pled as a

21   Section 9 case -- even under Section 9 it fails as a matter of

22   law; and it does so even more clearly under Section 11, which

23   is the proper section here, your Honor.

24         THE COURT:  Counsel, I'll let you respond.

25         MR. HEAD:  Thank you, your Honor.  I don't have a lot

1    more to expand on than what's already in our brief.

2         One is that it is not a Section 11.  We didn't have a

3    business relationship, whereas any other consumer that is

4    harmed by a product that is put into the marketplace by unfair

5    or deceptive trade practices.  We clearly outlined the unfair

6    deceptive trade practices, and for the reasons we stated,

7    Section 9 is the appropriate one, because we are simply an

8    innocent harmed party as a result of those unfair, deceptive

9    trade practices.

10         And then, you know, we've cited the cases in our

11    responsive brief relative to the transactional relationship.

12    We certainly alleged the -- that a products liability case,

13    such as this, the lack of a direct or indirect transactional

14    relationship is not fatal to a 93A claim.

15         Thank you.

16         THE COURT:  Thank you.

17         Counsel, I'll give you a moment for rebuttal, and then

18    we'll turn to Barnstable.

19         MR. SCODRO:  Thank you, your Honor.  I'll keep this

20    very brief.

21         With regard to personal jurisdiction, your Honor's

22    question hit the nail on the head.  They responded that this

23    product was not designed for the Massachusetts airport.  Their

24    allegation that it's made for the military would be -- that

25    would be tantamount to overturning the Block decision in -- or

1    Boit decision in the 1st Circuit, because those products were

2    made for construction workers, or the Newman decision by this

3    Court, because those were airplanes made for airports.

4            The point would be they would have to -- and they

5    candidly conceded today that this was not designed for the

6    Massachusetts air base, and that under the case law is

7    dispositive, your Honor.

8            Turning quickly to proximate cause.  The paragraphs in

9    the complaint that they identify, 80, 81, 82, those are

10   precisely what we're talking about.  Those talk about data from

11   2013 and a decision by the plaintiffs to remediate and take

12   other measures for which they now seek compensation based

13   entirely on data that was -- that is now -- now coming up on

14   five years old.

15           The point of the matter is that that simply -- you

16   cannot look at 2013 data, which, by the way, showed a decline,

17   a rapid decline, and say that action we took in response to

18   that is somehow proximately caused by defendants' actions.

19           Finally, turning quickly to the design defect.  Your

20   Honor, they're now claiming that PFOA and PFOS, somehow the

21   complaint is limited to those.  As we point out in our brief

22   and reply brief, there are numerous paragraphs, the guts of the

23   complaint, paragraph 36, 55, and paragraphs that follow 55,

24   they are all focused on PFAS and the harms that it can cause.

25   So to suggest now that the complaint is limited to these others

1    is simply untrue, your Honor, and is inconsistent with the way

2    the case has been pled.

3            And finally, your Honor, their answer to why this is,

4    in fact, a Section 9 case is that there was no commercial

5    transaction.  But the very case they cite for that proposition

6    at the end of their brief, your Honor, goes on to say that the

7    fact that there's no commercial transaction between the parties

8    doesn't mean that it suddenly becomes a Section 9 case.  It may

9    just mean that it's a failed Section 11 case.  And that's what

10   we have here, your Honor.

11           THE COURT:  Thank you.

12           MR. HEAD:  Your Honor, there was one thing that was

13   stated I think I just need to clarify.

14           THE COURT:  Thirty seconds, counsel.

15           MR. HEAD:  Thank you, your Honor.

16           Where he said that we admitted it was not designed for

17   the Massachusetts Air Force base.  What I said was it was not

18   sold to the Massachusetts Air Force base that we know of.  But

19   I do think that's exactly one of the issues that we would want

20   to raise in discovery, if the Court allowed discovery on

21   jurisdiction, is what were the specific relationships with this

22   Air Force base and these defendants.

23           So we did not say that it was not designed for this

24   Air Force base, but at least as we know today, I don't have

25   information that says it was directly sold with the purpose of

1    coming to this Air Force base, but discovery would flush that

2    out at some level in some more detail that we don't currently

3    have available to us.  Thank you.

4            THE COURT:  Thank you.

5            Counsel, to turn to Barnstable.

6            MR. FLEMING:  Yes, thank you, your Honor.

7            MR. HEAD:  Your Honor, if it's okay with you, the City

8    Solicitor for Westfield, he can either stay with me --

9            THE COURT:  Counsel, your choice.

10            Counsel.

11            MR. FLEMING:  Thank you, your Honor.

12            THE COURT:  And if anyone else has to move around.

13            MR. HEAD:  Just Attorney Cox is here for the City of

14    Barnstable, but I'm happy to leave it the way we are.

15            THE COURT:  Okay, thank you.

16            Good afternoon.

17            MR. FLEMING:  Thank you, your Honor.

18            In the interest of time, I'll try to be as brief as I

19    can.

20            THE COURT:  Sure.

21            MR. FLEMING:  Again, this is an action by the County

22    of Barnstable relating to its fire training academy and the use

23    of AFFF at its fire training academy by others, not the

24    manufacturer defendants.

25            Your Honor, we've asserted that under Twombly and

1    <u>Iqbal</u> the plaintiff still hasn't cured the deficiencies that

2    you cited in the prior complaint that caused you to dismiss

3    that complaint without prejudice.  In the interest of time, I'd

4    be content to rest on that argument, I think it's adequately

5    briefed, and move on to the count-specific arguments.

6             THE COURT:  Sure.

7             MR. FLEMING:  The <u>Twombly</u> and <u>Iqbal</u> arguments cut

8    across the entire panoply of claims.

9             You could break down the seven counts or causes of

10   action in the complaint into three buckets:  The first bucket

11   is Counts I through III for property damage; the second bucket

12   is Counts VI and IV for contribution or indemnification

13   relating to the litigation that the town brought against the

14   county; and then the third bucket would be for the county's

15   response costs.

16            And I'll pause there, because Mr. Head -- and I'll let

17   you speak, Mr. Head, of course -- mentioned to me in the

18   hallway that you may be dropping one of these counts.

19            MR. HEAD:  That's correct, your Honor.  Relative -- I

20   will file the paperwork following this hearing -- but for the

21   indemnification claim, the common law indemnification claim,

22   we'll file a notice of dismissal of that particular count,

23   which is Count IV I believe --

24            THE COURT:  Okay.

25            MR. HEAD:  -- don't hold me to that, but we'll file

1    that following this hearing.

2              THE COURT:  Okay, thank you.

3              MR. HEAD:  And it will just be limited to the common

4    law indemnification.

5              MR. FLEMING:  Thank you, Mr. Head.  Thank you, your

6    Honor.

7              So if I could turn to the first bucket, Counts I

8    through III, these are common law tort causes of action

9    purportedly seeking to recover for property damages.  There's a

10   failure to warn claim, a design defect claim, and a negligence

11   claim.  We believe these claims should clearly be dismissed

12   because while they're denominated as property damage claims,

13   when you review them, they really are seeking response costs.

14   And in your prior ruling, your Honor, we think you were clear

15   that in order to recover for response costs, you have to

16   proceed under Chapter 21E.  I think in your prior decision,

17   your Honor, you also said that if you allege damages that are

18   separate and apart from response costs, maybe that's another

19   question.  But here, when you look at the damages allegations

20   that they plead in support of Counts I and III, they're

21   virtually identical, they're substantively identical to the

22   very part that you quoted from their former cause of action in

23   the prior complaint that you dismissed finding that there's no

24   common law claim for indemnification or contribution for

25   response costs.

1           You quoted that they were asserting response action

2     damages and damages resulting from, quote, investigation,

3     cleanup, abatement, remediation, and monitoring costs.  That's

4     what you quoted at page 28 of your prior opinion.  When you

5     look at paragraphs 121, 130, and 135 supporting Counts I

6     through III, it's the identical language.

7           So, in short, your Honor, without belaboring it,

8     they're again pleading response costs and trying to evade the

9     response costs statute under the rubric of these common law

10    property damages claims, which I think you've already ruled

11    they cannot do.

12          So I'm happy to pause there, your Honor, unless you

13    have any questions.

14          THE COURT:  I'll let your brothers respond.

15          Counsel, who's --

16          MR. HEAD:  Thank you, your Honor.  I do have some

17    comments relative to the causation and the contribution

18    arguments that they have raised.  We appear to have skipped

19    those, but I'm happy to address those specifically.  Just a

20    couple of direct comments relative to what was alleged.

21          In terms of the causation, we have modified, amended

22    the complaint to specifically allege that these defendants

23    have -- their product was specifically used at the Barnstable

24    County facility, that the Hyannis Fire Department specifically

25    brought these defendants' products to the county facility, and

1    that, as a result of the use of the product in the manner in

2    which it was designed and intended, it was sprayed on the

3    ground and every time it was sprayed on the ground, resulted in

4    contamination of ground and soil water.

5         I apologize, I don't mean to talk fast, I know we're

6    under a timeline.

7         THE COURT:  I'm following you.

8         MR. HEAD:  On the contribution issue, again, this is

9    the issue under Mass. General Law 231B.  It's a question of

10   whether or not it's under subsection 3(d) or 3(c) and whether

11   or not there was a judgment in the town versus county lawsuit.

12   And there are two parts to that.  One is that there is a

13   judgment, as that term is defined under the Rules of Civil

14   Procedure for the Commonwealth of Massachusetts.  I think this

15   specific issue, while there has been litigation on this and

16   decisions, that there has not been a decision on this issue

17   from the Supreme Judicial Court, and it is entirely about

18   Massachusetts law and interpretation of Massachusetts statutes

19   and Massachusetts Rules of Civil Procedure.  And it may be, as

20   the Court is deliberating on this issue, an issue that should

21   be certified to the Mass. Supreme Court because of the

22   uniqueness of the circumstances.

23        But also I would argue that even under Section 3(d),

24   the judgment that was entered was entered within the statute of

25   limitations, and as a result of being entered with the court

1    within the statute of limitations, release of all the

2    defendants was not necessary.  And that's part one under

3    section 3(d) of 231B.

4          Relative to the issue of property damage, the

5    allegations and the rule relative to what is property damage,

6    within Massachusetts law you have to demonstrate the level of

7    contamination has decreased the fair market value or

8    necessitates remediation.

9          They bring up that the proper way of bringing up

10   response costs is through 21E, but these defendants have denied

11   that they're responsible under 21E.  So one or the other has to

12   give.  But if -- so under our common law theory of property

13   damage, one, if the 21E counts were to be dismissed, we should

14   have and we can have our common law counts for property damage.

15         But we also have not simply alleged remediation, but

16   we've also alleged other damage.

17         So paragraph 107, 107 of our complaint talks about the

18   contamination of plaintiff's property and groundwater which has

19   caused damage.

20         Paragraph 121 alleges that the county has suffered and

21   needs to remediate and has suffered other damages.

22         Paragraph 124 alleges that the groundwater and

23   drinking water has been damaged.

24         Again, paragraph 130 alleges remediation and other

25   damages.

1          Paragraphs 114, 123 allege harm to soil and

2    groundwater.

3          And that the paragraph 135, again, seeks remediation

4    and other damages.

5          These are entirely consistent with the definition of

6    property damage with the Commonwealth of Massachusetts, which

7    is measured by the diminution of property value or, if it is

8    curable through remediation, then the cost of remediation.  So

9    we have a common law count relative to that.

10          We're not seeking double recovery, but to the extent,

11    one, if 21E survives and we continue on with 21E, it would only

12    be those costs, those other damages that are not covered

13    through the contribution or the need to do -- for remediation,

14    but it is other damages, diminution of property value.

15          So we have, in fact, alleged and the complaint

16    survives the motion to dismiss as alleged and as pled.

17          Thank you, your Honor.

18          THE COURT:  Thank you.

19          MR. FLEMING:  Thank you, your Honor.  So I think

20    Mr. Head got a step ahead of me.  He went to the next argument

21    that I haven't argued yet, so I'll kind of --

22          MR. HEAD:  Sorry.

23          THE COURT:  Yes.

24          MR. FLEMING:  I know you wanted to get it in quickly.

25          So I'll address, your Honor, their now contribution

1    claim relating to their settlement of the action that the town

2    brought against the county.  And at the end of the day, we

3    think this is extremely clear under Massachusetts contribution

4    statute, Chapter 231B, right, if you have a settlement during a

5    litigation, you have to discharge the common liability in order

6    to go after a third party, right.  You have to discharge that

7    common liability.  The statute is very clear.  The only way

8    that they try to get around that is to say that, Well, the

9    statute expressly says that that does not apply in case there

10   was a judgment.

11        And here, they're making the argument that the

12   stipulation of dismissal or the agreement of judgment that was

13   filed relating to the settlement constitutes a judgment within

14   the meaning of the statute.

15        And of course that just cannot be.  Anytime a lawsuit

16   is settled, there's a stipulation of dismissal filed, you would

17   completely eviscerate the statute if parties could simply not

18   discharge the common liability, file a stipulation of dismissal

19   or agreement of judgment during the litigation and end it,

20   which is always done, and completely evade the strictures of

21   the statute.

22        The Breon case, which we cited in our brief, which was

23   partially vacated on other grounds, recognized exactly this.

24   It's squarely on point.  The statute wouldn't make any sense.

25   I think it would wreak havoc with the Massachusetts

1    contribution statute if their interpretation were adopted.  The

2    statute would never have any effect.  Every time there's a

3    settlement, someone would file a stipulation, say that's a

4    judgment.  That's not the type of judgment the statute is

5    referring to, and the statute just would simply never apply in

6    a Section 3(d).  So, respectfully, we just don't think that

7    argument is tenable in any way whatsoever.

8          Your Honor, I think since he's already addressed it,

9    I'll continue to the next section, however you want to proceed.

10          THE COURT:  I think that's fair.

11          MR. FLEMING:  Up to you.

12          MR. HEAD:  One brief comment in response since --

13          THE COURT:  Why don't I let your brother finish, and

14    then I'll give you final word as to both.

15          MR. FLEMING:  And if I may, I'll reserve time on

16    Twombly and the property damage allegations that I started

17    with.

18          THE COURT:  Sure.

19          MR. FLEMING:  But, your Honor, the third bucket is the

20    response clause claim, which is at Count V.  Your Honor

21    previously ruled, we believe correctly, that to the extent

22    plaintiffs have alleged something in their complaint, they're

23    really seeking response costs.  We pointed out to the Court

24    previously, and to Mr. Head, that if they do seek response

25    costs, we're probably going to be back here again.  Because

1   when you take a look at the statute and you have a decision

2   squarely on point, we don't believe the manufacture defendants

3   meet the definition of persons liable under Section 5(a) of

4   21E.  In the city of -- Town of Westport case; excuse me, your

5   Honor, you ruled, quote, Westport has not alleged that

6   defendants caused the release aside from such manufacture and

7   sale, nor has Westport alleged that defendants transported --

8   in that case it was PCBs -- PCBs or otherwise interacted with

9   Westport's property aside from the boilerplate language of 5(a)

10  3 through 5, and I inserted the word "boilerplate."

11      And that's the same thing that we have here, your

12  Honor.  They're basically alleging that the manufacture

13  defendants are persons liable under the statute in the same way

14  that the plaintiff in Town of Westport alleged that Monsanto

15  was.

16      Now, in their brief they make some arguments that the

17  defendants arrange for the transport.  But I think the Town of

18  Westport would show that that's not enough.  And second, they

19  really have not alleged that in their complaint.  They claim

20  that in their brief.  They really haven't alleged any facts to

21  that effect in their complaint.

22      There's no interaction alleged by the defendants with

23  regard to this product at issue with the sites.  And that's key

24  to satisfying the prong for persons liable under the statute.

25      And further, this idea that, well, you know, if

1    they're not persons liable under the response cost statute,

2    even though we're seeking response costs, we can still just

3    assert common law damages.  Again, I think that would

4    eviscerate the purpose of the statute.  The purpose of the

5    statute was to carefully craft sort of this system for dealing

6    with response costs in these types of situations.  I don't

7    think the statute was defining persons liable and saying, you

8    know what, never mind, if you're not meeting this definition,

9    we're going to have a whole lot of litigation; we're going to

10   extend it to product manufacturers as well.  I think the

11   legislature could have done that if it wanted to, and it

12   decided not to do that.

13          Thank you, your Honor.

14          THE COURT:  Counsel, we have a few minutes left.  I'll

15   split the time between you.  You can just give me your final

16   remarks, counsel.  Certainly, both sides have given me a lot to

17   think about.  I've thought about some of these issues before,

18   but I will consider it in the context of the pleadings before

19   me now.

20          Counsel.

21          MR. HEAD:  Thank you, your Honor.

22          On the persons liable 21E issue, this is significantly

23   different than the Westport case.  Westport was an ingredient

24   manufacturer of a final product.  These defendants are the

25   manufacturer of a final product.  There are allegations

1   relative to information and knowledge that these defendants

2   had, in fact, a specific campaign to ensure that scientific

3   research on PFAS was not distributed publicly, was not given to

4   the regulators.  And that they knew that if regulators became

5   aware of its risk, they would be forced to halt the manufacture

6   of their product.  That's alleged in the complaint.

7          This is a product that when it is used as designed, it

8   is sprayed directly on the ground, and every time it is sprayed

9   on the ground it is going to cause soil and groundwater

10  contamination because these are products that contain PFOS and

11  PFOA and because of that, when you spray it on the ground, it

12  is going to contaminate the soil and the groundwater with PFOS

13  and PFOA.  They did, as alleged, cause the contamination by

14  virtue of their failure to properly disclose to the regulators

15  the information they had relative to the effects of these

16  products, that they were designed to be used in a way that was

17  going to by design put this product in the soil and groundwater

18  and contaminate the soil and groundwater.

19         In fact, so they both otherwise caused but they

20  otherwise meet the legally responsible for provision of 21E

21  making them subject to liability under 21E.

22         I would disagree very strongly that this eliminates

23  common law liability.  What this creates is a different

24  mechanism for allowing for strict liability, but does not --

25  and there's case law that says this does not eliminate and does

```
 1    not void, and we cite it in our brief, the common law.  It is
 2    simply a mechanism under state statute to create liability.
 3           With regard to -- very quickly, on the issue of -- I'm
 4    sorry, your Honor, of contribution claim.  On the contribution
 5    claim, this was -- I disagree very strongly that paragraph,
 6    subparagraph (d), only allows a case to proceed if there is a
 7    settlement or release of all of these defendants in that
 8    underlying claim.  There are two paragraphs in paragraph (d),
 9    one is if the settlement occurs within the statute of
10    limitations, that does not require release of all defendants.
11    Paragraph 2 is the one that does require release of all
12    defendants.
13           We argue and would argue that the release, the
14    judgment that was filed, one, puts it under paragraph (c)
15    because it's a judgment; or two, under paragraph (d) is a
16    judgment that was entered prior to the expiration of statute of
17    limitations and the lawsuit was then filed within a year
18    following the judgment.
19           THE COURT:  Okay.
20           MR. HEAD:  Thank you, your Honor.
21           MR. FLEMING:  Your Honor --
22           THE COURT:  Counsel, very briefly.
23           MR. FLEMING:  Very briefly, your Honor, thank you so
24    much.
25           Back to the property damage claims, Counts I and III.
```

```
 1   Mr. Head referred to diminished property values, I think I
 2   referred to that in the brief as well.  It's simply not pled in
 3   the complaint.  They had an opportunity previously to amend
 4   their damages, they haven't done that.  It's not in the
 5   complaint.  Your Honor, the property damage allegations are the
 6   ones that we think you rejected previously.
 7        Secondly, on Twombly and Iqbal, I won't belabor it,
 8   suffice it to say there is very, very conclusory -- there are
 9   very conclusory added allegations purportedly saying that the
10   defendants' products were used at the training camp.  We don't
11   think that's sufficient, your Honor.
12        And then, your Honor, I think Mr. Head had just said
13   that the Westport case doesn't stand for the proposition that
14   you can void common law damages if you're proceeding under
15   Chapter 21E, that response costs don't void common law damages.
16   I think you've already held to that effect, your Honor, that
17   doesn't mean you can try to seek to recover the same damages,
18   right, you have to try to seek something separate and apart
19   from response costs.
20        As I just I think articulated, the damages allegations
21   that they set out are really only alleging response costs.
22   They should be estopped from asserting that they have common
23   law damages.  They previously said they had none to avoid the
24   statute of limitations, and we lay out that argument in our
25   brief, your Honor, so I remind the Court of that as well.
```

1    Thank you.

2            THE COURT:  Thank you, counsel.

3            I appreciate your arguments and you arguing them

4    within the time limits I gave each side.

5            I promise you, counsel, I'll go back to your papers

6    with those arguments in mind thank you.

7            THE CLERK:  All rise.

8            THE COURT:  Thank you.

9            (Court adjourned at 4:04 p.m.)

10                  - - - - - - - - - - - -

11                        CERTIFICATION

12            I certify that the foregoing is a correct transcript

13    of the record of proceedings in the above-entitled matter to

14    the best of my skill and ability.

15

16

17

18    /s/Debra M. Joyce_____        July 31, 2018_____
      Debra M. Joyce, RMR, CRR, FCRR        Date
19    Official Court Reporter

20

21

22

23

24

25